735 So.2d 89 (1999)
STATE of Louisiana
v.
Eric EWENS.
No. 98-KA-1096.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*91 Laurie A. White, Louisiana Appellate Project, New Orleans, for Appellant, Eric Ewens.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, John J. Molaison, Jr., Assistant District Attorneys, Gretna, for Appellee, State of Louisiana.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, J.
On November 15, 1996, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Eric Ewens, with simple burglary of a motor vehicle, a violation of La. R.S. 14:62. At his arraignment, defendant plead not guilty. On March 5, 1997, defendant was tried before a six-person jury, which returned a unanimous verdict of guilty as charged. On March 21, 1997, the trial court sentenced defendant to five years at hard labor. On April 2, 1997, the state filed a multiple offender bill of information, alleging defendant to be a third felony offender.[1] On September 11, 1997, defendant stipulated to being a second felony offender. The trial court vacated its previous sentence, and re-sentenced defendant to six years at hard labor. This appeal ensued.

FACTS
Deputy Scott Fontaine of the Jefferson Parish Sheriff's Office testified at trial that he was on patrol in the early morning hours of October 29, 1996. At approximately 2:40 a.m., he received a "suspicious person" call in the area of the 2200 block of Pasadena Street in Metairie, describing the suspicious person as a black male in dark clothing who was looking into the windows of parked cars. Upon arriving in the area, Deputy Fontaine was informed that the subject was in a blue car, which *92 was then driving past his police car. Deputy Fontaine circled the block and caught up to the blue Isuzu, which had pulled into a nearby a gas station. Deputy Fontaine observed the driver, later identified as defendant, standing outside his vehicle near a pay telephone. Deputy Fontaine pulled into the gas station, exited his vehicle and questioned defendant as to what he was doing in the area that late at night. Defendant told the deputy he was looking for some friends. Deputy Fontaine also informed defendant that there had been a rash of vehicle burglaries in the area recently, and that he had just received a suspicious person call which he was investigating. Deputy Fontaine further testified that while he was speaking to defendant, he observed several car stereo components inside of defendant's car in plain view.
When asked about the stereo equipment, defendant told Deputy Fontaine that he had purchased the equipment from a Circuit City retail store earlier that day. Deputy Fontaine testified that, after more closely observing the stereo equipment, the appearance of equipment was inconsistent with defendant's statement, as the equipment looked used. Based on his observations, Deputy Fontaine detained defendant in the back seat of his police car, and traveled back to the area where he first saw defendant to check for any vehicle burglaries.
Upon returning to the 2200 block of Pasadena, the deputy noticed a car with its right rear window broken. Deputy Fontaine contacted the owner of the vehicle, Edward Morgan, who lived in an adjacent apartment building. Mr. Morgan told Deputy Fontaine that the window was not broken when he secured the car for the night, and, on closer inspection, he realized that he was missing several stereo components which had been installed in his vehicle. Mr. Morgan listed each item that was missing. An assisting police unit escorted Mr. Morgan back to defendant's car, where Mr. Morgan identified the stereo equipment as his. Defendant was thereafter placed under arrest.
Mr. Morgan also testified at trial and corroborated Deputy Fontaine's testimony. Mr. Morgan testified that he arrived home at approximately 9:30-10:00 p.m. on October 28, 1996. He testified that he had some high fidelity stereo equipment installed in his car, and that when he left his car that evening, he locked the doors and activated the car alarm. Mr. Morgan told the jury that at approximately 1:00 a.m. the following morning, he heard his car alarm go off. Mr. Morgan looked outside, but did not see anyone, so he turned the alarm off and went back to bed. He did, however, notice a blue Isuzu parked across the street. Mr. Morgan also testified that one of the items found in defendant's car was an equalizer he had recently purchased via mail order, which was still in the box in which it arrived. The box had Mr. Morgan's name and address on it.

STATE'S MOTION TO DISMISS APPEAL
Prior to addressing defendant's assignments of error, we note that in its brief, the state has incorporated a motion to dismiss the majority of the assignments of error in this appeal. The state contends that defendant's appeal is untimely because it was filed more than five days after defendant's conviction on March 5, 1997. Under La.C.Cr.P. art. 912, only a final judgment or ruling is appealable. In a case where the defendant has not been sentenced, the proceedings are not at an end and the judgment of conviction is not yet final. State v. Quinones, 94-436 (La. App. 5 Cir.11/29/94), 646 So.2d 1216. Therefore, in a criminal case, appeal delays commence when the sentence is imposed, not when the defendant is convicted. La.C.Cr.P. art. 912(A) and (C)(1). Accordingly, the appeal in this case was timely as it was filed on March 21, 1997, immediately after defendant's sentencing.[2] *93 The state's motion to dismiss is without merit and is therefore denied.

DISCUSSION
In his first assignment of error, defendant argues that the evidence at trial was insufficient to support a guilty verdict because the state failed to prove that he entered the burglarized vehicle. The state responds that defendant's entry of the vehicle was proven by circumstantial evidence.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, the reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of La. R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
To convict a defendant of simple burglary, under La. R.S. 14:62, the state must prove beyond a reasonable doubt that defendant entered a vehicle without authorization, and had the specific intent to commit a felony or theft therein. Mere possession of property recently stolen in a burglary does not create a presumption that the defendant committed the offense. State v. Brown, 445 So.2d 422 (La.1984). There is no indication, however, that the jury in this case relied on such a presumption, and our sufficiency review is satisfied without such a presumption.
A review of the facts of the case, in the light most favorable to the prosecution, reveals that Deputy Fontaine received a call of a suspicious black male in dark clothes driving a blue car and looking into cars in the 2200 block of Pasadena. Upon reaching Pasadena, Deputy Fontaine saw a black male driving past him in a blue car. When he circled the block and caught up with the blue Isuzu, it had already stopped at a gas station, and defendant was standing outside of the car at a pay phone. Deputy Fontaine stopped to question defendant and noticed inside defendant's car the stereo equipment, later identified as stolen that night out of Mr. Morgan's car. Defendant made a voluntary statement to Deputy Fontaine that he purchased the equipment that day at Circuit City. This statement proved to be a lie a short time thereafter.
The record also reveals that the victim, Mr. Morgan, testified that upon hearing his car alarm go off, he looked out of his apartment window and saw a blue Isuzu parked across the street. Therefore, in addition to showing defendant in possession of the stolen property and lying about how he obtained it, the state also presented evidence from two different witnesses which placed defendant at the scene of the crime at the time of the crime.
*94 The Fourth Circuit Court of Appeal, following former jurisprudence, reviewed a similar defense argument in State v. Williams, 96-1276 (La.App. 4 Cir.4/9/97), 693 So.2d 204, writ denied, 97-1212 (La.10/31/97), 703 So.2d 18, and found that a defendant's proximity in time and space to the site of the crime, his similarity to the description of the perpetrator, and his lack of credibility, constituted sufficient circumstantial evidence to conclude that the defendant was guilty of simple burglary.
Considering the facts in the record in the case before us, we find that the circumstantial evidence presented by the state, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that defendant was guilty of La. R.S. 14:62 beyond a reasonable doubt. This assignment is therefore without merit.
In his second assignment of error, defendant contends that Deputy Fontaine lacked a reasonable suspicion of criminal activity to initially stop and talk to defendant. He thus argues that the evidence ultimately recovered from the car was the product of an unlawful stop and an unlawful seizure, and therefore not admissible at trial.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A person is "seized" within the meaning of the Fourth Amendment only when that person either submits to the police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A person is seized within the meaning of Article 1, Section 5 of the Louisiana Constitution when that person is either "actually stopped" or when an "actual stop" of the person is "imminent." State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on rehearing, 626 So.2d 720 (La.1993). A person has not been "actually stopped" unless he submits to a police show of authority or is physically contacted by the police. An "actual stop" of the person is "imminent" only when the police come upon a person with such force that, regardless of the person's attempt to flee or elude the encounter, an actual stop of the person is virtually certain. Id. Law enforcement officers enjoy the same liberty possessed by every citizen to address questions to other persons. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Belton, supra.
In the present case, Deputy Fontaine testified that he had neither his flashing lights nor his siren activated when he stopped to question defendant at the gas station. Defendant had pulled into the gas station prior to the deputy's arrival, and was standing near his car at a public pay phone when the deputy walked over and initiated a conversation. Defendant's conversation with Deputy Fontaine was voluntary, and he was not detained at that point. Upon seeing the car stereo components through the open driver's door and the windows of defendant's car, Deputy Fontaine asked defendant where he had gotten them. Defendant voluntarily told Deputy Fontaine that he had purchased the equipment earlier that day at Circuit City. Upon observing that the equipment had obvious signs of wear and did not look to be newly purchased, Deputy Fontaine detained defendant in order to ascertain the origins of the equipment.[3]
A police officer may briefly detain a person if the officer has an objectively *95 reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Considering the facts of this case at the time defendant was detainedthat defendant and his vehicle matched the description of the suspicious person call Deputy Fontaine had just received and was at the location of the call when the deputy arrived, that Deputy Fontaine observed what appeared to be stolen car stereo equipment loosely-arranged in plain view inside of defendant's car, after having been told by defendant that he had just purchased the equipment new that day, we find that Deputy Fontaine had an objectively reasonable suspicion that defendant was engaged in criminal conduct and was justified in briefly detaining him in order to investigate further.
After reviewing the record in its entirety, the evidence is undisputed that defendant voluntarily pulled into the gas station and voluntarily discussed how he came into possession of the stereo equipment in plain view inside his vehicle. Clearly, there was no unlawful stop. We further find that after assessing the situation, Deputy Fontaine had an objectively reasonable suspicion for detaining defendant to investigate further, and defendant was not unlawfully seized. The subsequent seizure of the equipment, after it was determined to be stolen, was likewise proper. Therefore, the trial court did not err, as defendant also argues in this assignment of error, in admitting the crime scene photographs of the stolen equipment at trial. This assignment of error is without merit.
In defendant's third assignment of error, he argues that his trial counsel was constitutionally ineffective for failing to object to the admission of the photographs of the stereo components at trial, and for failing to object to defendant's sentence as excessive. Since we have determined that the photographic evidence was properly admitted, there was no valid objection to its admission, and defense counsel could not have been ineffective in failing to object to it. Defendant also claims that trial counsel was ineffective for failing to subpoena fingerprint information until after trial. However, he fails to indicate what, if anything, this information might have shown at trial. Further, there was no testimony at trial that any fingerprints were recovered from the scene. Because of the lack of fingerprint information in the record before us, we will pretermit a ruling on this issue, as this claim should be raised and considered on post-conviction relief. See State v. Zapata, 97-1230 (La. App. 5 Cir.5/27/98), 713 So.2d 1152, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443.
Defendant also argues in this assignment of error that trial counsel was ineffective for failing to show that defendant's sentence, although it was within the statutory guidelines, was excessive. Defendant also raises an excessiveness of sentence claim in his sixth, and final, assignment of error. Since a determination that defendant's sentence was not constitutionally excessive would make moot any assertion that defense counsel was ineffective for failing to show that it was, we will address the excessiveness arguments herein. The state has responded by incorporating into their brief a motion to correct an illegally lenient sentence.
With regards to the state's motion, La.C.Cr.P. art. 881.1D provides in pertinent part that the "[f]ailure to make or file a motion to reconsider sentence ... shall preclude the state or the defendant from raising an objection to the sentence... on appeal or review." The state did not make or file a motion to reconsider sentence with the trial court. By failing to do so, the state has failed to properly preserve the issue for appeal. State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993).
*96 With regards to defendant's assertions that his six year sentence is excessive, we note that defendant also failed to file a motion to reconsider sentence or make an oral objection to the sentence, and that pursuant to La.C.Cr.P. art. 881.1, failure by the defense to do so generally precludes review of the sentence on appeal. State v. Alas, 622 So.2d 836 (La. App. 5 Cir.1993), writ denied, 629 So.2d 397 (La.1993). However, because defendant is also alleging an ineffective assistance of counsel claim with regards to his sentence, we will review defendant's sentence for constitutional excessiveness.
The Louisiana Constitution, in Article I, Section 20, prohibits the imposition of excessive punishment. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La. 1993).
Defendant complains that his six year sentence as a second felony offender is excessive. The penalty provisions of the underlying conviction of simple burglary state that "[w]hoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both." La. R.S. 14:62. Defendant also plead guilty to being a second felony offender. The penalty provisions under the habitual offender law state in pertinent part that "the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. R.S. 15:529.1A(1)(a).
As a second felony offender with an underlying conviction of simple burglary, defendant's sentencing range was six to twenty-four years. Thus, defendant's six year sentence is half of the twelve year sentence he could have received upon a first conviction of simple burglary and, by law, is the minimum sentence he could receive as a second felony offender.[4]
In State v. Rome, 96-0991 (La.7/1/97), 696 So.2d 976, 978, the Louisiana Supreme Court, held that
[o]ne of the traditional, inherent and exclusive powers of the judiciary is the power to sentence. After a defendant is convicted of a crime, the determination of his sentence is within the sound discretion of the trial judge. However, the trial judge's sentencing discretion is not unbridled, as the legislative branch of government is free to decide what constitutes a crime as well as "what punishments shall be meted out by a court after the judicial ascertainment of guilt." Therefore, the fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature. [citations omitted]
Upon review, we find that not only was defendant's six year sentence as a double felony offender well within the discretion of the trial court, it was the statutory minimum, and it is not constitutionally excessive. In fact, as the state points out in its brief (albeit too late), defendant's sentence is illegally lenient because the trial court failed to provide that it be served without benefit of probation or suspension of sentence, as mandated by La. R .S. 15:529.1G. Because we find defendant's sentence is not excessive, defense counsel could not have been ineffective in failing to show that it was. Accordingly, these assignments of error are without merit.
*97 In his fourth assignment of error, defendant argues that the trial court committed reversible error by using an erroneous instruction to charge the jury on the issue of intent. At trial, defendant did not make a contemporaneous objection to the jury charge. La.C.Cr.P. art. 801 provides that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." Appellate review of such an error also will normally be precluded by the failure to make a contemporaneous objection as required by La.C.Cr.P. art. 841(A). State v. Page, 96-227 (La.App. 5 Cir.8/28/96), 680 So.2d 104, 106, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.
Nevertheless, defendant argues that the jury charge should be reviewed absent a contemporaneous objection using the rationale found in State v. Williamson, 389 So.2d 1328, 1331 (La.1980). Williamson held that a jury charge to which there was no contemporaneous objection may be reviewed on appeal when: (1) the error violates fundamental requirements of due process; and (2) the trial record is sufficient to establish the error without the need for a post-trial evidentiary hearing. Id. at 1331.
In the instant case, when instructing the jury regarding intent, the trial court told the jury that simple burglary was a specific intent crime, and defined specific and general intent. The trial court concluded the charge by stating: "You may infer that the defendant intended the natural and probable consequences of his acts."
Relying upon the United States Supreme Court holding in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), defendant argues that this type of instruction violates the requirement that the state prove each element of the offense beyond a reasonable doubt.
The Louisiana Supreme Court addressed the same issue in State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 254-55, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996) stating:
Defendant contends that the trial court improperly instructed the jury in the guilt phase that it "may infer that the defendant intended the natural and probable consequences of his acts." He argues that he objected to this instruction at trial on the ground it created an improper presumption under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
In Sandstrom, the Court held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. In State v. Copeland, 530 So.2d 526, 539 (La.1988), we stated:
The mere use of the word "presume" raises the spectre of a Sandstrom-type problem. For that reason, the preferable instruction is "... you may infer that the defendant intended the natural and probable consequences of his acts ..." (emphasis in original).
In the instant case, the trial judge's instruction follows the language we approved in Copeland. Clearly, the instruction does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, this instruction was not erroneous.
The language in the jury charge in the matter before us is identical to the language in State v. Mitchell and State v. Copeland. It does not set forth a conclusive presumption shifting the burden of proof from the state to defendant. Accordingly, the instruction was not erroneous, and this assignment is without merit.
In defendant's fifth assignment of error, he argues that he was erroneously *98 found to be a second felony offender. However, the record is clear that, after being properly advised of his rights, defendant stipulated to being a second felony offender. Defendant's guilty plea to the double bill precludes him from raising a claim that the state did not introduce sufficient proof of his status as a double offender; he plead guilty to it. State v. Rose, 97-943 (La.App. 5 Cir.1/27/98), 708 So.2d 1093, 1095. This assignment is likewise without merit.
Finally, pursuant to La.C.Cr.P. art. 920, the record was reviewed for errors patent. La.C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the three year prescriptive period at the time of sentencing. The record reflects that after sentencing defendant on September 11, 1997, the trial court informed defendant that he had three years "from today's date" to apply for post-conviction relief, rather than three years from the time when the judgment becomes final. We therefore order the trial court to send written notice of the proper prescriptive period to defendant within ten days of the rendering of this Court's opinion, then file written proof in the record that defendant received such notice. State v. Kershaw, 94-141 (La.App. 5 Cir.9/14/94), 643 So.2d 1289.
For the foregoing reasons, defendant's conviction and sentence are hereby affirmed. This matter is remanded to the trial court for further action consistent with this opinion.
AFFIRMED; REMANDED.
NOTES
[1] The bill was amended on September 11, 1997, pursuant to a plea agreement, to charge defendant as a second felony offender.
[2] Defendant's motion for appeal was premature when it was filed after conviction and sentence on the offense, but before the guilty plea and sentence as a multiple offender. However, that procedural defect was cured by the subsequent resentencing. State v. Balser, 96-443 (La.App. 5 Cir.11/14/96), 694 So.2d 351; State v. Page, 96-227 (La.App. 5 Cir.8/28/96), 680 So.2d 104, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.
[3] Additionally, Deputy Fontaine testified that defendant had no complaints about going back to the area where the suspicious person call originated, as defendant "was content that the stereo components in the car were his and that, you know, he was not in the area doing anything wrong."
[4] Indeed, he could have been sentenced to twenty-four years in prison, four times what he received.