STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-544


STATE OF LOUISIANA

VERSUS

PATRICK MICHAEL SHELVIN

AKA - PATRICK SHELVIN


********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 139272
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

********

**JOHN D. SAUNDERS**
**JUDGE**

********

Court composed of John D. Saunders, Jimmie C. Peters, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Keith A. Stutes**
**District Attorney**
**Alan P. Haney**
**Assistant District Attorney**
**Fifteenth Judicial District**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P. O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Patrick Michael Shelvin**

**SAUNDERS, Judge.**

Defendant, Patrick Michael Shelvin, was charged with simple burglary, a violation of La.R.S. 14:62, on December 6, 2012. A jury found him guilty as charged on September 3, 2014. The trial court denied Defendant's motion for new trial on October 22, 2014. The trial court also denied post-trial motions to lift a pre-trial detainer, for mistrial, and to dismiss Defendant's attorney. After a presentencing investigation, the trial court sentenced Defendant to the maximum term of twelve years at hard labor and a $2,000 fine.

## FACTS:

On October 9, 2012, Defendant entered Kim's Grocery in Lafayette, Louisiana, without authorization and was found by police with money and cigarettes from the store.

## ERRORS PATENT :

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR:

Defendant argues the evidence at trial was insufficient to prove he entered the business with the intent of committing a theft therein, as opposed to developing the intent after entering the business. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of

review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact[,]" but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. [120], [134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (per curium)(last alteration in original).

"Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein[.]" La.R.S. 14:62(A). "Mere possession of property recently stolen in a burglary does not create a presumption that the defendant committed the offense." *State v. Ewens*, 98-1096, p. 5 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 93, *writ denied*, 99-1218 (La. 10/8/99), 750 So.2d 179 (citing *State v. Brown*, 445 So.2d 422 (La.1984)). "Although the intent to commit a burglary is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. . . . Displacement of the victim's possessions may be indicative of the specific intent to commit a theft." *State v. Wilson*, 44,586, 44,737, p. 4 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, 215, (citations omitted) *writ denied*, 09-2655 (La. 1/28/11), 56 So.3d 973.

In *State v. Marcello*, 385 So.2d 244 (La.1980), the defendant was discovered in the hallway of an office building after he entered the building through the roof, where he was sleeping, to wash in a restroom. He was searching for an easier exit when he was discovered. His presence and subsequent flight, without possession of burglary tools or stolen property, were insufficient to establish that he intended to commit a felony or theft.

In *State v. Jones*, 426 So.2d 1323 (La.1983), the defendant's conviction for attempted simple burglary was reversed because the State failed to prove he had the requisite intent to commit a felony or theft. The defendant was discovered in his neighbor's home, but without burglary tools or any other evidence that he intended to commit a felony or theft. The defendant said he went there to seek transportation to obtain medical assistance. His neighbors testified that he

3

appeared to be in a drunken stupor or on drugs; police testified his eyes were glossy, but he was otherwise coordinated. The supreme court held the defendant's mere presence in the house did not support an inference of intent to commit a felony or theft therein.

The supreme court reversed the defendant's conviction for attempted simple burglary of an inhabited dwelling in *State v. Ricks*, 428 So.2d 794 (La.1983). The defendant, who knew a resident of the apartment, pulled the screen door latch loose around midnight. He was unarmed, carried no burglary tools, and did not steal or attempt to steal anything. The State introduced no evidence of his involvement in similar burglaries.

In *State v. Jacobs*, 504 So.2d 817 (La.1987), police entered a home and found one defendant under the kitchen table and the other defendant, his brother, under the only bed in the house. They found food on the kitchen table and a chisel, screwdriver, and flashlight on the floor of the bedroom near the bed. Entrance was gained through a locked door, the defendants were discovered hiding in the dwelling with tools nearby one of them that could certainly be considered burglary tools. Additionally, items belonging to the renter had been tampered with, and one of the defendant's own testimony established he had been involved in or was being sought in connection with another burglary. The first circuit affirmed the defendant's conviction for simple burglary. *State v. Jacobs*, 435 So.2d 1014 (La.App. 1 Cir. 1983).

The supreme court reversed the defendant's conviction, stating:

> In the present case, the circumstances relied on by the court of appeal as proving intent simply do not exclude every reasonable doubt as to the intent element of simple burglary. Whether the entry was through a locked or an open door is of no significance to the intent issue. The finding of tools customarily used for break-ins also bears primarily on the conceded issue of unauthorized entry. The fact that the intruders were hiding when apprehended inside the house merely

4

indicates a consciousness of guilt of criminal trespass and does not necessarily indicate an intent to steal. The fact that relator's brother had been told the police were looking for him "for another burglary" proves nothing as to relator's intent to commit a theft or felony when he made the unauthorized entry here. There was no evidence before the jury as to relator's lack of employment or past criminal record. The impeached credibility of relator's brother does not supply affirmative evidence of guilt, but rather provides only a basis for an appellate court reviewing the sufficiency of evidence to disregard the particular testimony so that there is no probative value either way. Finally, the intermediate court's observation that items belonging to Mrs. Vicks had been tampered with is an overstatement of the evidence. . . .

Here, the prosecution attempted to prove its theory that relator and his brother had just broken into the house and were caught before they could get away with anything. On the other hand, relator's theory of innocence was that his brother was staying temporarily in the house (concededly by means of an unauthorized entry) and that he was supplying his brother with food. Even if relator's brother's testimony is completely disregarded, the evidence presented by the prosecution is at least as consistent with relator's theory as it is with the prosecution's theory.

According to the testimony of the police officers, someone had apparently been sleeping in the bed and had eaten a meal recently in the house. The lessee, on the other hand, denied that she had ever eaten or slept there. Moreover, while one reasonable hypothesis as to the tools on the bedroom floor was that relator's brother had just used them to break into the house, another reasonable hypothesis consistent with the lessee's testimony was that the lessee's friend who reassembled the bed in the house used tools from the toolbox in the kitchen and left the tools in the bedroom. The overall evidence, both direct and circumstantial, even when viewed in the light most favorable to the prosecution, does not exclude every reasonable doubt that relator and his brother made an unauthorized entry into the house in order for the brother to live there temporarily. Thus, the evidence does not prove beyond a reasonable doubt that they made an unauthorized entry with the intent to commit a theft or felony inside the house.

State v. Jacobs, 504 So.2d 817, 820-821 (La.1987) (footnote omitted).

In State v. Wright, 36,635 (La.App. 2 Cir. 3/7/03), 840 So.2d 1271, the

defendant's conviction for simple burglary was reversed where he entered a house

undergoing extensive renovations. There were no signs of forced entry, the

victim's possessions were not displaced, the defendant did not possess any burglary tools or weapons, and he was not wearing a mask or gloves.

Conversely, in *State v. Pike*, 426 So.2d 1329 (La.1983), the supreme court affirmed defendant's conviction for simple burglary of an inhabited dwelling. The defendant gained entrance through a locked kitchen window. He was discovered hiding in a bedroom closet at 2:30 a.m. A jewelry box had been tampered with, and a ring was missing. The supreme court found these facts sufficient to prove the defendant had the intent to commit a theft.

Likewise, in *Wilson*, 26 So.3d 210, the defendant was found sleeping in a locked vehicle with a broken rear passenger window. With him was a bag containing bolt cutters and a ski mask, which did not belong to the vehicle owner. The glove box had been opened, and a bottle of cologne and some change were missing. They were found either on the defendant or in his bag.

The defendant in *Wilson* argued the evidence showed he either entered the vehicle to sleep or he was so intoxicated he lacked the requisite specific intent to commit a theft. The second circuit distinguished *Jacobs*, 504 So.2d 817, and *Wright*, 840 So.2d 1271, because those cases lacked evidence that any items were displaced. The second circuit affirmed the defendant's conviction, finding a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

Here, Andy Nguyen, owner of L&R Grocery, commonly known as Kim's Grocery, closed the store on the night of October 9, 2012. He saw nothing wrong with the ceiling, and everything on the shelves was in order when he left. When Mr. Nguyen received a call from his alarm company later that night, he returned to the store and "saw a lot of officers surrounding the building." He unlocked the store and let them in, and he saw some of the ceiling tiles had fallen. Officers told him to leave the building; about five minutes later, they brought someone out of

6

the store. Mr. Nguyen went inside and found "four (4) or five (5) cartons of cigarettes inside a bag, and some of the money, coins inside the bag, also." Police never showed him the man they brought out of the store.

Officer Brandon Morvant, of the Lafayette Police Department, arrived at the store that night with Officer Paul Crozier, a canine officer. They found the doors locked and the windows intact, with no obvious signs of entry. When Mr. Nguyen arrived to let them in, Officer Morvant saw "ceiling tiles hanging down as if somebody had entered through the ceiling." They found Defendant "in a make-shift closet in the back of the business."

Defendant refused commands to surrender and lie on the ground. The dog knocked Defendant to the ground, and the officers handcuffed him. Officer Crozier identified Defendant at trial as the man they found in the store. Near Defendant was a white trash bag with "a bunch of tobacco products, cartons of cigarettes, cigars and . . . also . . . a white bucket full of change, loose change, rolled change from liked [sic] a register[.]" Officer Crozier did not see any surveillance video or take any DNA samples. The officers arrested Defendant and took him outside the store and into the police unit.

Although Officer Morvant reviewed surveillance video of the store, none of the camera angles showed a suspect entering the business. Entry was made at the southwest corner, and Officer Morvant found Defendant in the closet in the northwest end of the building. The area behind the counter and other areas of the store were disheveled. Nevertheless, none of the cameras had any footage showing anyone in the store, but Officer Morvant was uncertain about whether the security system was operational or if he saw video of the actual time of the burglary.

Officer Morvant also swabbed a five-gallon bucket and a box of coins for DNA. He submitted the swabs to the Lafayette Police Department evidence

section. Normal practice was to send swabs to the Acadiana Crime Lab for submission into the combined DNA Index System. Officer Morvant was not involved in the follow-up of the burglary. Thus, he was unaware whether the swabs were submitted. Likewise, Officer Crozier did not see any surveillance video or take any DNA samples.

Corporal Scott Rummel, of the Lafayette Police Department, was the lead investigator on this case, but he never went to the scene. Although he received information that DNA evidence had been collected, he did not know how many swabs were taken, and he did not know if the swabs were submitted for testing. He could not say whether the swabs matched the DNA of Defendant or of anyone else. He did not feel DNA identification was necessary considering the entirety of the investigation. He understood the surveillance video was to be downloaded by the store owner, "[a]nd if it could not be, then we would have no surveillance video." Corporal Rummel never attempted to go to the store and get the video. All the evidence from his investigation pointed to Defendant as the person who committed the burglary; none of the evidence suggested his innocence.

In order to affirm Defendant's conviction, this court must find that he had the intent to commit a felony when he entered the store. Someone gained entry to the store through the ceiling. Defendant was inside the store, hiding in a closet. Money and merchandise were nearby, and they were not there when the owner left the store earlier in the evening. The trial court evaluated the credibility of the witnesses, including the responding and investigating police officers, and found Defendant guilty.

Given the standard of review, the unauthorized entry into the building, the displacement of items inside it, and the Defendant's presence in the building near the displaced items, we find sufficient evidence to establish Defendant's specific

intent to commit a felony inside the store.  Accordingly, Defendant's conviction is affirmed.

**<u>DECREE</u>:**

Defendant's conviction is affirmed.

**AFFIRMED.**