428 So.2d 794 (1983)
STATE of Louisiana
v.
Joseph RICKS, Jr.
No. 82-KA-0485.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied April 15, 1983.
*795 William Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry Connick, Dist. Atty., Mary Charlotte McMullar, Jim Letten, Bill Culver, John Craft, Asst. Dist. Attys., for plaintiff-appellee.
Calvin Johnson, Brian Burson, New Orleans, Supervising Atty., Gayle Roberts, Student Atty., for defendant-appellant.
WATSON, Justice.
Defendant, Joseph Ricks, Jr., was convicted of attempted simple burglary of an inhabited dwelling, and sentenced to serve two years at hard labor; the first without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27 and 62.2.

FACTS
Shortly after midnight on September 23, 1981, Harold Truman was awakened by a sound at the window. Truman got up to investigate, but did not see anyone. Shortly thereafter, he heard noises at the back of the apartment, armed himself with a .38 caliber pistol and went to the back door. Seeing someone through the window of the door, Truman asked, "What are you doing here?", but received no response. The screen door latch had been pulled loose. Truman warned the individual that he would shoot, and received a profane negative in response. Since it looked as though the person was coming in the door, Truman fired his weapon. He aimed low and wounded the defendant in the leg. The gunshot awakened Sallie Talbert, who shared the apartment with Truman. After the police were called, they followed a trail of blood and located the defendant in a vacant apartment in a neighboring building.
Defendant Ricks testified that he had been drinking with friends and relatives before going to visit Sallie Talbert. After knocking loudly and calling her name, he got ready to leave and was shot. He testified about a long association and said he helped paint the apartment. Although unaware Sallie was living with anyone, Ricks said he would have stopped by to give her a "holler" anyway. Ricks denied that Truman had spoken to him through the door and that he had responded. Several defense witnesses corroborated Ricks' account of heavy drinking and intoxication that evening.
Truman testified that Ricks did not appear intoxicated. Two police officers corroborated this and said he had no odor of alcohol on his breath. Talbert admitted she had known Ricks for about a year but denied that he had ever been in the apartment.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment defendant argues that the state failed to prove he had the intent to commit a felony or theft in Truman's apartment, an essential element of the offense. The state argues that specific intent to commit a felony or theft can be inferred from the facts.
The elements of the offense of simple burglary of an inhabited dwelling are set forth in LSA-R.S. 14:62.2 as follows:
"Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein...." (Emphasis added.)
Specific intent to commit a felony or theft is required for attempted simple burglary, LSA-R.S. 14:27 and 62. State v. Jones, 426 So.2d 1323 (La., 1983); State v. Marcello, 385 So.2d 244 (La., 1980). For a conviction of attempted burglary of an inhabited dwelling, LSA-R.S. 14:27 and 62.2, the intent must also be specific. The two crimes differ in that attempted burglary of an inhabited dwelling requires the additional element of an inhabited structure and carries a more severe penalty.
LSA-R.S. 14:10, in pertinent part, defines specific criminal intent as:

*796 "... [T]hat state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act...."
Specific criminal intent to commit a felony or theft may be inferred from the circumstances. LSA-R.S. 14:10; LSA-R.S. 15:445.[1] However, there must be some evidence that the defendant actively desired to commit a felony or theft.
In reviewing a conviction where proof of an element of the offense is based on an inference from circumstantial evidence, the court must consider two standards: that of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and LSA-R.S. 15:438. State v. Graham, 422 So.2d 123 (La., 1982). Under the Jackson standard, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational juror could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. LSA-R.S. 15:438 provides that in order to support a conviction, circumstantial evidence must exclude every reasonable hypothesis but guilt. Here, the evidence introduced by the state fails to prove the necessary element of an intent to commit a felony or theft. One can reasonably believe that Ricks went to Sallie Talbert's apartment without criminal intent.
In State v. Jones, supra, a conviction of attempted simple burglary was reversed because the state failed to prove the defendant had the requisite intent to commit a felony or theft. In that case, the defendant was discovered in his neighbor's home, but without burglary tools or any other evidence that he intended to commit a felony or theft. The defendant explained his presence by saying he went there to seek transportation to obtain medical assistance. It was held that his mere presence in the house did not support an inference of intent to commit a felony or theft.
In State v. Marcello, supra, defendant was discovered in the hallway of an office building. He explained that he entered the building through the roof, where he had been sleeping, to wash up in a restroom. The defendant stated that he had left the restroom in search of an easier exit when he was discovered. His presence and subsequent flight, without possession of burglary tools or stolen property, were insufficient to establish that he intended to commit a felony or theft.
Compare State v. Pike, 426 So.2d 1323 (La., 1983) where a conviction of simple burglary of an inhabited dwelling was affirmed. In Pike, entrance was gained through a locked kitchen window; defendant, a neighbor, was discovered hiding in a bedroom closet at 2:30 A.M.; a jewelry box had been tampered with; and a ring was missing. These facts were sufficient to prove that the defendant had the intent to commit a theft.
Like the defendants in Marcello and Jones, Ricks was unarmed, carried no burglary tools, and did not steal or attempt to steal anything. No evidence was introduced that Ricks had been involved in other similar burglaries. Ricks' attempt to enter the apartment and his response to Truman's warning do not show he intended to commit a felony or theft inside. Only evidence of intent to commit specific types of crimes is sufficient to support a conviction of attempted burglary of an inhabited dwelling. The evidence introduced by the state does not exclude reasonable hypotheses that the defendant intended to commit a misdemeanor or intended a social visit as he asserted. Therefore, the conviction must be reversed.[2]
*797 Because the defendant's first assignment of error merits reversal of his conviction, his second assignment is not addressed.
For the foregoing reasons, defendant Joseph Ricks, Jr.'s conviction and sentence are reversed and set aside, and defendant is ordered discharged.
REVERSED AND REMANDED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court adopted the following standard of appellate review in criminal cases: the evidence is sufficient to support the conviction if the appellate court, viewing the evidence in the light most favorable to the prosecution, concludes that a rational juror could have found beyond a reasonable doubt that the defendant was guilty of every element of the crime. Pursuant to this decision, this court has now abandoned its prior "no evidence" standard for appellate review and has adopted the Jackson standard.[1]
In my opinion, the Jackson standard does not require a reversal of this conviction, because when all of the evidence (including the rejected testimony of defendant and his witnesses) is viewed in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that defendant, at the time he attempted to enter the residence illegally, had with the intent to commit a crime therein.
Why would defendant break the screen door latch, rather than calling out to his "friend" for authorization to enter, unless he intended to commit a crime therein?[2] Why did defendant not respond when Truman asked what he was doing there, unless his intent at the time of breaking the latch was to enter without authorization and commit a crime?[3] Why did defendant hide in a vacant apartment in a neighboring building, after he ran from the door upon being shot, rather than seeking medical treatment, if he did not intend to commit a crime upon entering the building? Why did defendant claim a long association with Miss Talbert and a previous visit to the apartment to help with painting unless he was trying to cover up his criminal intent at the time of the attempted entry?
It is extremely significant in this case that the jury flatly rejected defendant's evidence, by which he attempted to show an innocent explanation for his entry on two bases, namely (1) that he intended to visit Miss Talbert, his long-time friend, and called out for entry and (2) that he was so intoxicated that he could not have intended to commit a crime. The jury's rejection of these two explanations leaves no apparent explanation for his attempted entry other *798 than to commit a crime inside the apartment.
Finally, the majority suggests that defendant may have intended to commit a misdemeanor inside the apartment rather than a theft or felony. This is a distorted interpretation of the Jackson standard of appellate review. A rational juror could have concluded that no person enters a locked apartment in the middle of the night without authorization except to commit a theft or serious crime, when there is no apparent explanation for failing to seek authority to enter. The members of the Legislature, as rational people, apparently shared this view by enacting the burglary statute which requires intent to commit a theft or felony therein (rather than to commit any crime therein). On the basis of the evidence in this case, a conclusion that defendant might have broken the latch on the door with the intent to enter the apartment to commit a misdemeanor simply ignores the rational juror element of the Jackson standard.
I would affirm the conviction.
MARCUS, Justice (concurring in the denial for rehearing).
Since our appellate jurisdiction in criminal cases extends "only to questions of law," when a claim is made on appellate review that a person has been convicted on insufficient evidence, whether direct or circumstantial, our inquiry should be restricted to only whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. La. Const. art. 5, § 5(C) (1974). Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1977). In Jackson, the United States Supreme Court noted that this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.... Once a defendant has been found guilty of the crime charged, the factfinder's roll as weigher of the evidence is preserved through a legal conclusion that upon judicial review all the evidence is to be considered in the light most favorable to the prosecution." Applying this standard of review, I concur in the denial of the rehearing.
NOTES
[1] LSA-R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
[2] Although the evidence shows that Ricks attempted criminal trespass, LSA-R.S. 14:27 and 14:63, that is not a statutory responsive verdict. "There are constitutional arguments against our extending the doctrine of State v. Byrd to embrace lesser and included offenses that are not listed in C.Cr.P. 814 as responsive verdicts...." State v. Jones, 426 So.2d 1323, at 1327 (La., 1983).

Under authority of State v. Byrd, 385 So.2d 248 (La., 1980) only four convictions of lesser included offenses, which are not responsive verdicts in LSA-C.Cr.P. art. 814, have been ordered. One involved a conviction of attempt to obtain credit with a stolen credit card, after it was held that the evidence would not support a conviction of obtaining credit by use of a stolen credit card. State v. Williams, 389 So.2d 384 (La., 1980). That order fell under the provisions of LSA-R.S. 14:27. The other three cases involved reductions in convictions of operating a vehicle while intoxicated to lesser grades of the same offense. State v. Stephenson, 412 So.2d 553 (La., 1982); third offense reduced to second offense; State v. Parker, 411 So.2d 449 (La., 1982); third offense reduced to first offense; and State v. Vezina, 391 So.2d 450 (La., 1980); third offense reduced to first offense. These lesser offenses are provided in LSA-R.S. 14:98. With the statutory exceptions enumerated above, all other convictions of lesser offenses under Byrd have been responsive verdicts in LSA-C.Cr.P. art. 814.
[1] There is no doubt that an appellate court would affirm this conviction under the "no evidence" standard.
[2] Defendant's testimony that he called to Miss Talbert was flatly rejected by the jury, and Truman denied that the latch was broken prior to the incident.
[3] The time of the intent is extremely significant. An attempt is a specific intent crime, and the critical period for examining defendant's intent was the time that he broke the latch in his attempt at an unauthorized entry.