LOBRANO, J.,
DISSENTS WITH REASONS.
|,I respectfully dissent. Because the evidence, when viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt, I would affirm the conviction. Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979). Additionally, I would remand the case in order to impose the appropriate service charge required along with restitution.
I find the wording in the majority opinion as it relates the application of the Jackson standard of review problematic. The majority states that “to affirm the conviction for issuing a worthless check, we must find that the State proved beyond a reasonable doubt...” each of the elements of the crime. The majority seems to substitute its judgment for that of the jury’s, which is improper under Jackson v. Virginia. Rather, Jackson is concerned with whether any rational jury could reach the conclusion that all of the elements of the crime had been proved beyond a reasonable doubt. See, e.g., State v. Jackson, 437 So.2d 855, 858 (La. 1983) (stating, “Under Jackson v. Virginia, the reviewing court must determine ‘whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”) (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781).
I j>Here, a jury convicted the defendant, Jermain M. Worthy Sr., (“Defendant”) of *381 violating La. R.S. 14:71, which requires, in pertinent part, that an offender issue the worthless check, in exchange for anything of value, “with the -intent to defraud” while “knowing at the time of the issuing that the offender has not sufficient credit with the bank — ” The majority finds the intent element lacking. First, the majority acknowledges that a person’s failure to respond to a certified demand letter within ten days creates a rebuttable presumption of intent to defraud. La. R.S. 4:71(A)(2). The majority goes on to indicate that, in its opinion, this presumption was rebutted by the fact that all four demand letters were returned unclaimed. The majority states that because the presumption was rebutted, the evidence is insufficient for the conviction. While the presumption may have been rebutted, it is not the State’s burden to prove that the presumption is accurate, but instead, the State’s burden is to prove the element itself — the intent to defraud. See, e.g., State v. Ricks, 428 So.2d 794, 796 (La. 1983) (finding that, under Jackson, the court must determine whether “any rational juror could conclude that the state proved the essential elements of the crime beyond a reasonable doubt.”) (emphasis added). The presumption only operates as one possible way to prove that element.
According to La. R.S. 14:71(A)(2), the presumption is created when the issuer fails to pay the check within ten days after notice of nonpayment upon presentation “has been deposited by certified mail in the United States mail system..addressed to the issuer thereof either at the address shown on the instrument or the last known address for such person shown on the records of the bank upon which such instrument is drawn...” (emphasis added) The record clearly indicates that notices of nonpayment were sent via certified mail to the exact address Defendant had provided the bank regarding this account. Because the letters were in fact mailed as required, the victim and Defendant spoke about the check prior to the victim’s attempt to cash it, and the Defendant’s failure to provide |sa current address prevented him from receiving notice, a rational jury could have found that intent existed regardless of the rebutted presumption.
The majority also finds that Defendant lacked intent because of his ongoing business relationship with the victim. According to the majority, the “context in which the check was written.. .suggests that the undated check was an informal promissory note for the repayment of the loan.” In support of their interpretation of the facts, the majority cites State v. Jones, 400 So.2d 658 (La. 1981). In Jones, the defendant lived on social security income and regularly wrote checks to a grocery store. Id. at 659-60. The grocery store would hold the checks and deposit them at the end of the month when the defendant’s social security money was deposited. Id. at 660. One month, the defendant could not cover the full amount of the check, and she was convicted under La. R.S. 14:71. Id. at 659-60. The appellate court reversed that conviction, finding that the arrangement between the defendant and the grocery store was an open account agreement that was not subject to prosecution under La. R.S. 14:71. Id. at 660-661.
The case sub judice is distinguishable from Jones. In Jones, the facts “clearly indicated] a credit arrangement,” because the jury heard testimony from several witnesses indicating that the grocery store’s credit customers were handled the same way as the defendant. Id. at 660. In this case, the jury heard multiple facts that could lead a rational juror to the conclusion that this was not a credit agreement. First, unlike the Jones defendant who told the grocery store owner when to cash each *382 regularly issued check, here, the jury heard that despite the victim’s repeated calls and messages, Defendant never contacted the victim as promised to tell her to date and cash the check. In fact, the jury heard that Defendant told the victim that she should have already cashed the check, despite never giving her the agreed upon permission. Then, the jury heard that Defendant admitted to an investigator that he wanted to negotiate restitution. Lastly, the jury | ¿heard that the victim contacted Defendant’s attorney and was still not paid as premised. These contradictory statements, given the jury’s ability to make credibility determinations, could lead a rational jury to believe that Defendant had the intent to defraud at the moment of issuing" the check. Because, from the evidence adduced at trial, a rational jury could have concluded that Defendant had the requisite intent beyond a reasonable doubt, I find that Defendant’s' argument in his first assignment of error claiming that the evidence was insufficient to prove that Defendant intended to defraud at the time of the issuance of the check to be without merit.
Defendant also argues that there was insufficient evidence to support his conviction because the State failed to show that he did not have sufficient funds in his account at the time he issued the check or that he knew at the time that the victim presented the check that there were insufficient funds. In a similar case, State v. Mosby, the defendant issued a check to the victim for car repairs, and on the day of the issuance there were sufficient funds to cover the check. State v. Mosby, 42, 519, p. 1 (La. App. 2 Cir. 5/18/07), 956 So.2d 843, 844. However, a few days later, when the victim presented the check for payment, there were insufficient funds. Id. at 844. The victim sent a certified letter to the defendant as mandated by La. R.S. 14:71, to which the defendant never responded. Id. He was eventually convicted of issuing a worthless check, and on appeal he argued that the evidence was insufficient to support his conviction because he had sufficient funds in his account on the day that he issued the check. Id. at 846. The court rejected his argument, noting that the account was overdrawn the day after he issued the check, and it remained overdrawn. Id. The trial court found the employee’s testimony more credible than the defendant’s, and the appellate court affirmed, noting that “the conflict between the two goes to the weight of the evidence, not the sufficiency.” Id. at 846. Finding no internal contradiction in the employee’s |fitestimony or any conflict with the physical evidence, the appellate court affirmed the defendant’s conviction. Id.
By contrast, the knowledge element was lacking in State v. Davis, 48,777 (La.App. 2 Cir. 2/26/14), 134 So.3d 1257, wherein the defendant, a high-stakes gambler, signed markers at the victim’s casino and then lost all his money. The casino routinely allowed customers to obtain chips using counter-checks or markers, allowing thirty days for the debtor to make good on the markers. Id. at 1260. The casino attempted for months to collect on the defendant’s markers, to no avail, and it submitted the markers to the defendant’s designated financial institution, which returned them due to insufficient funds. Id. at 1260-61. The defendant attempted to raise funds to cover the markers and even offered to convey commercial property to the casino. Id. at 1261. While admitting to investigators from the D,A.’s Office that he owed the debt, he denied any intent to defraud the casino, and he made a partial repayment of the debt. Id. Nonetheless, the jury convicted him. Id.
On appeal, the court reversed. Id. at 1264. The court stated: “The proper inquiry under La. R.S. 14:71(A) is whether a defendant knew that he had not sufficient *383 credit with the bank, not whether his acttial monetary balance was sufficient-to cover a check, draft or other payment issued by him.” Id. (emphasis added) The court noted that the State failed to introduce evidence to show that the defendant knew his account with the banking institution that he listed on the markers contained insufficient funds to cover the markers. Id. The court thus found that the State failed to prove the defendant’s knowledge that there were insufficient funds for the markers or his intent to defraud the casino. Id. at 1264-65.
In the present case, Defendant asserts that the evidence was insufficient because the State failed to prove that he never had a balance that exceeded $26,000 on any day listed in the bill of information (February 25, 2008 to May 8, 2009). He | ficites no authority for this interpretation. A time range does not mean that the offense was committed on all days in the range; it merely alleges that the offense was committed at some point during the time range. While the bill of information set forth a large time range, the victim testified that Defendant gave her the check in mid-June 2008. In addition, Mr. Robert, a witness from Defendant’s bank, detailed the account’s activity in June 2008, during which the balance never reached $26,000. The jury obviously found this testimony credible, and fact finder’s credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence. State v. Meyers, 2011-1145 (La.App. 4 Cir. 9/19/12), 100 So.3d 938; State v. Johnson, 2009-0259 (La.App. 4 Cir. 9/16/09), 22 So.3d 205. Under the facts of this case, the jury’s credibility finding is not contrary to the evidence.
Defendant’s final assignment of error is in essence a plea to suspend his obligation to make restitution payments during the pendency of his appeal. Defendant now asks that this court suspend his restitution .payments during the pendency of this appeal. He asserts that he should not have to make these payments because the evidence was insufficient to support his conviction. However, at the sentencing hearing, he did not object to the payment of restitution in the amount of $500 a month as a condition of his probation, and there is no indication in the record that he has sought this relief in the trial court. Indeed, his failure to object to his sentence or to file an objection to his sentence as per La. C.Cr.P. art. 881.1 bars any claim as to it on appeal. See State v. Alexander, 2006-1274, p. 10 (La.App. 4 Cir. 5/16/07), 958 So.2d 1203; State v. Wilson, 2006-1421 (La.App. 4 Cir. 3/28/07), 956 So.2d 41. Thus, this “assignment” is without merit as well.
With respect to a review of the record for errors patent, I agree with the majority that any failure to arraign Defendant on the second amendment to the bill is harmless. However, I find that the district court failed to impose an additional |7service charge. La. R.S. 14:71(G) mandates that in addition to ordering restitution in the amount of the worthless check, the court “shall” also impose:'■
a fifteen dollar per check service charge payable to the person or entity that initially honored the worthless check or checks, an authorized collection agency, or justice of the peace. In the event the fifteen dollar per check service charge is paid to a person or entity other than one who initially honored the worthless check or checks, the court shall also order as part of the sentence restitution equal to the amount that the bank or other depository charged the person or entity who initially honored the worthless check, plus the actual cost of notifying the offender of nonpayment as required in Paragraph A(2).
*384 There is no indication that the district court imposed this additional $15 service charge. In State v. Campbell, 13-130 (La.App. 5 Cir. 10/30/13), 128 So.3d 1137, the appellate court remanded the case for re-sentencing where the trial court failed to impose the $15 fee and restitution.
For all of the above-stated reasons, I would affirm Defendant’s conviction and remand the case for the imposition of the additional $15 service charge as mandated by La. R.S. 14:71(G).
I respectfully dissent.