STATE OF LOUISANA

VERSUS

DAN ROBERTSON

NO. 22-KA-363

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-483, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING


March 29, 2023


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and John J. Molaison, Jr.


**CONVICTION AND SENTENCE AFFIRMED**
   **SJW**
   **JGG**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
DAN ROBERTSON
    Katherine M. Franks

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Monique D. Nolan
    Zachary L. Grate
    Molly M. Massey

**WINDHORST, J.**

Defendant, Dan Robertson, appeals his conviction and sentence for attempted simple burglary. For the reasons that follow, we affirm.

**PROCEDURAL HISTORY**

On January 26, 2021, the Jefferson Parish District Attorney filed a bill of information charging defendant, Dan Robertson, with one count of attempted simple burglary of a 2017 Chevy Tahoe belonging to Clifford Brown, in violation of La. R.S. 14:27 and La. R.S. 14:62.[1] Defendant was arraigned and pled not guilty.

On February 1, 2022, a six-person jury unanimously found defendant guilty as charged. Defendant filed a motion requesting a downward departure from sentencing under State of Louisiana v. Dorthey, 623 So.2d 1276 (La. 1993), which was denied by the trial court. Defendant also filed a motion for new trial, which the trial court denied.

On March 16, 2022, the trial court sentenced defendant to six years imprisonment at hard labor for attempted simple burglary and ordered his sentence to run concurrently with any sentence he may be serving.[2] On the same day, the State filed a Habitual Offender Bill of Information alleging defendant was a third-felony offender pursuant to La. R.S. 15:529.1. On March 23, 2022, defendant stipulated to being a third-felony offender, and the trial court vacated defendant's original sentence and resentenced defendant to eight years imprisonment at hard labor without the benefit of probation or suspension of sentence.[3] This appeal followed.

---

[1] Defendant was also charged with criminal trespass in violation of La. R.S. 14:63, under case number 21-484 of the 24th Judicial District Court. Defendant was charged with willfully and unlawfully entering "immovable property owned by another, located at 524 Hector Avenue, without the express authorization of, Allen Fiorenza," i.e. the yard. The misdemeanor offense was tried by the trial court simultaneously with this jury trial of the vehicle burglary charge, and defendant was found guilty of criminal trespass. Defendant did not seek review of his misdemeanor conviction.

[2] Defendant was also sentenced to thirty days imprisonment for criminal trespass under case number 21-484 to be served concurrently with defendant's attempted simple burglary sentence in this case.

[3] The trial court ordered defendant's habitual offender sentence to be served concurrently with defendant's sentence under case number 21-484.

**EVIDENCE and FACTS**

Detective Brent Baldassara, assigned to the burglary theft section of the Jefferson Parish Sheriff's Office ("JPSO"), testified he worked a "paid detail" patrolling the Metairie Country Club subdivision from 11:00 P.M. on November 22, 2020 until 7:00 A.M. on November 23, 2020. He stated that he has worked this paid detail for "around one year." When he patrols the area, he drives an unmarked vehicle that has sirens and lights. On November 22, 2020, while driving north in the 500 block of Iona Street, he observed an unidentified black male wearing dark-colored clothing and a protective "face covering" walking southbound on Iona Street towards Avenue E. When the unidentified man noticed his vehicle, he ran and hid behind some bushes in a nearby residence. Detective Baldassara testified that he stopped his vehicle, identified himself as "the police," attempted to locate the subject, and notified headquarters of the incident.

Detective Baldassara testified that his search was unsuccessful and he returned to his vehicle. He "circled the block" and returned to Iona Street. Detective Baldassara stated that he saw the suspect a second time when he reappeared from behind some bushes and the suspect ran into the rear yard of a residence "going back towards Hector" Avenue. He proceeded to the 500 block of Hector Avenue, where he observed the arrival of assisting officers, including Deputy Nick Songy and Deputy Davis.[4] Deputy Songy noticed a side gate open at 524 Hector Avenue. The three officers went through the gate into the rear yard of the residence. Detective Baldassara testified that he noticed the subject "squatting" next to some bushes along the rear fence. He recounted that the subject was wearing the same clothing as the individual he observed running away from him near Iona Street.

---

[4] Deputy Davis' first name was not referred to in any evidence or in the trial transcript.

Detective Baldassara testified that the subject was detained at that time, identified himself, and he was placed in his patrol vehicle. Defendant told the officers that he resided at 3501 Roger Williams Boulevard, in New Orleans.[5] After defendant was secured in the vehicle, Deputy Songy returned to the rear yard of 524 Hector Avenue and discovered a bandana on the ground where defendant was observed "squatting." Defendant told the officers that he had been at a bar on Airline Drive and was using the subdivision as a "cut-through" to get to his residence. Defendant did not identify the bar despite Detective Baldassara requesting the bar's name. Defendant was subsequently arrested based on his outstanding attachments and taken to JPSO.

After defendant's arrest, but on the same morning of November 23, 2020, Detective Baldassara was informed that there had been an attempted burglary of a vehicle in the area he was patrolling. He testified that he spoke to Clifford Brown, the owner of the vehicle, who resided at 529 Hector Avenue. Mr. Brown provided him with surveillance footage from his "Ring" camera showing the attempted burglary of his vehicle.

Upon reviewing the surveillance footage at trial, Detective Baldassara affirmatively identified defendant as the individual in the surveillance footage. He testified that the individual in the surveillance footage had on the same clothing as defendant when he was arrested. In the surveillance footage, he could see a maroon colored shirt underneath the black sweatshirt the individual was wearing. On the night he was arrested, defendant was wearing dark clothing with a maroon shirt underneath. Detective Baldassara also verified the bandana he logged into evidence after defendant's arrest as the same black and white bandana Deputy Songy found in the yard where defendant was found hiding. He stated that in the video, defendant

---

[5] The transcript provides 3501 Rodger Williams Boulevard, New Orleans and 3501 Rodger Williams Street, New Orleans. However, Detective Baldassara identified defendant's address as shown on State's exhibit 3, which shows defendant's address as "3501 *Roger* Williams St.," in New Orleans.

attempted to open the vehicle's door with the bandana. Based on the bandana and defendant's clothing, Detective Baldassara made the decision to "rebook" defendant with attempted simple burglary. He explained that when defendant pulled the door handle with the bandana, the bandana got stuck, which caused an "audible sound" as the bandana was pulled free from the door handle. Detective Baldassara verified that defendant was wearing a maroon shirt when he was arrested after viewing a "booking photo" of defendant. Detective Baldassara also identified defendant in open court as the individual he arrested in the subdivision. In furtherance of the circumstantial evidence indicating defendant and the individual in the surveillance footage were the same, he testified that on the night he chased and arrested defendant, he did not see anyone else in the Metairie Country Club subdivision and that defendant was arrested in the general vicinity of the attempted burglary of the vehicle.

On cross-examination, Detective Baldassara conceded that his report provided that in the surveillance footage, defendant "utilized a dark-colored fabric which was identified as the bandana found in the rear year of where he was located." Detective Baldassara was shown the black and white bandana in evidence and agreed that the bandana is "mostly black." He was then shown the surveillance footage in which defense counsel stated that the bandana or fabric used on the door handle appeared "white or light colored." Detective Baldassara admitted that the "video is poor quality, distorted" but he made a decision based on his observations and the video, stating that the bandana is black and white. He also conceded that although defendant's booking photo shows that his hair is gray, his report and the subsequent affidavit of arrest listed defendant's hair color as black and bald, respectively. He admitted he obviously had trouble identifying defendant's hair color. Despite the discrepancy in his hair color, Detective Baldassara testified that defendant was the individual he arrested in the rear yard of the residence on Hector Avenue and that he

is the individual in the surveillance footage, as indicated by the clothing and bandana. Detective Baldassara testified defendant's clothes were not seized as evidence when he was initially arrested on his outstanding attachments because at that point they did not have any reports or complaints of criminal activity. He acknowledged that individuals flee from the police "sometimes" when they have outstanding warrants for their arrest.

JPSO Deputy Nicholas Songy testified that he was also working a "paid detail," patrolling the Metairie Country Club subdivision on November 22, 2020 and November 23, 2020. He stated he has been working this particular detail for approximately 11 years and is familiar with the area. He stated that normally, there is only one unit patrolling the area. However, during holiday seasons, the subdivision sometimes has two units patrolling because people go out of town. He testified that the night defendant was arrested in the subdivision was during the Thanksgiving holiday. Detective Songy testified that he was the "primary unit" and Detective Baldassara was the "back-up unit." Detective Baldassara radioed that he observed a subject in the 500 block of Hector or Iona and gave a description of the subject. Detective Songy arrived quickly to the location to assist with canvassing for the subject, and that the patrol area was a small area. He observed a gate "slightly ajar" on a residence that "back[ed] up to Iona." He went through the gate with Detective Baldassara and Deputy Davis. As they approached the back fence, he saw a "dark figure hunched over . . . trying to hide his face, trying to look as dark as possible." They detained the subject and removed him from the backyard. Deputy Songy stated that he returned to the backyard to search for anything that may have been left behind or discarded by the subject, such as a gun. He testified that he found the bandana "in the exact area" where they located defendant. Because it was evidence and defendant was already in the patrol unit, Depute Songy testified that he gave the bandana to Detective Baldassara and he did not ask defendant if the

bandana belonged to him. He identified defendant in open court as the individual he found in the backyard of the residence on Hector Avenue. Deputy Songy was shown the bandana in evidence and positively identified it as the bandana he found that night.

Deputy Songy testified that in order to access the subdivision from Airline Drive, a person would need to scale or climb several obstructions, such as an eight to ten-foot fence, a twelve-foot wall, or other gates. He explained that the area where the attempted burglary occurred was located in the opposite direction of where defendant indicated he was heading. Deputy Songy testified that this subdivision was not a "cut-through" to get from Airline Drive to defendant's residence unless the person was climbing fences and going through several backyards. He further testified that no one else was walking throughout the subdivision when the officers were canvassing the area for the subject and that no one else matched the description of the subject except defendant. Deputy Songy testified that he saw the surveillance footage a day or two after defendant was arrested when he was informed of the attempted burglary that occurred in the same vicinity and directly across the street from where they found defendant.

Clifford Brown, the owner of the vehicle, testified that he resided at 529 Hector Avenue. On the morning of November 23, 2020, he reviewed the surveillance footage video from his Ring camera and discovered that between the early hours of that day and the late night hours of the prior night, someone attempted to break into his vehicle, a 2017 Chevrolet Tahoe. Mr. Brown testified that he did not recognize or know defendant and asserted that he did not give defendant or any other individual permission "to use, enter, or in any shape, form, or fashion go into [his] vehicle" on the night of November 22, 2020 through the morning of November 23, 2020. He provided a copy of the surveillance footage to JPSO and it was published to the jury.

The surveillance footage was a sixty-nine-second recording that captured a black male, wearing a white protective facemask, a dark-colored hooded sweatshirt, with a maroon shirt underneath, and dark-colored jeans, walking up to Mr. Brown's vehicle in his driveway. With the bandana, the man in the video pulled the locked front-passenger door handle. As he released the door handle, the bandana became "stuck." The individual pulled the banana out, which resulted in the door handle making an "audible sound," and he then walked away.

## DISCUSSION

In his first assignment of error, defendant asserts that the evidence was insufficient to establish that he was the individual in the surveillance footage that attempted to enter Mr. Brown's Chevrolet Tahoe. He claims that the surveillance footage captured less than thirty seconds of an unidentified man approaching the vehicle, tugging on a door handle, and retrieving a bandana that became stuck in the door handle. He contends that the perpetrator's face cannot be seen nor can his skin or hair color be determined from the surveillance footage. Defendant asserts that the record is absent of any testimony wherein he was observed attempting to enter the vehicle. He also contends that the time of the attempted unauthorized entry was not established.

In his second assignment of error, defendant contends that the State failed to prove beyond a reasonable doubt that he had the specific intent to commit a theft or felony had he gained access to the vehicle. Relying on Marcello and Ricks,[6] defendant contends that his presence and subsequent flight, without possession of

---

[6] State v. Marcello, 385 So.2d 244 (La. 1980); State v. Ricks, 428 So.2d 794 (La. 1983).

burglary tools or stolen property,[7] were insufficient to establish that he intended to commit a felony or theft.[8]

The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Chinchilla, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1195, writ denied, 21-274 (La. 04/27/21), 314 So.3d 838, cert. denied, — U.S. —, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Flores, 10-651 (La. App. 5 Cir. 05/24/11), 66 So.3d 1118, 1122.

An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Sosa, 05-213 (La. 01/19/06), 921 So.2d 94, 99.

Evidence may be either direct or circumstantial. State v. Williams, 05-59 (La. App. 5 Cir. 05/31/05), 904 So.2d 830, 833. When circumstantial evidence is used

---

[7] Possession of burglary tools is not an element of attempted simple burglary. See State v. Nelson, 08-584 (La. App. 4 Cir. 12/17/08), 3 So.3d 57, 60, writ denied, 10-166 (La. 01/7/11), 52 So.3d 881. Here, the State did not allege that defendant was in possession of stolen property.

[8] Defendant's reliance on Marcello and Ricks is misplaced. Marcello involved a "place to stay" defense, which was not alleged in this case. State in the Interest of E.M., supra; State v. Winslow, 29,888 (La. App. 2 Cir. 10/29/97), 702 So.2d 22, 25. Ricks involved defendant paying a social call on a girl he knew. Defendant tugged on the screen door to get her attention, a male staying with her heard the noise, grabbed a gun, and yelled through a secured door for defendant to leave. Defendant, who was intoxicated, did not respond and the male shot defendant in the leg. In that case the trier of fact concluded it was a reasonable hypothesis that defendant merely intended a social visit and no specific intent was proven by the State.

to prove the commission of the offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." On appeal, the reviewing court does not determine if another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Instead, the appellate court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Williams, 14-882 (La. App. 5 Cir. 05/14/15), 170 So.3d 1129, 1136, writ denied, 15-1198 (La. 05/27/16), 192 So.3d 741.

In the present case, defendant was convicted of attempted simple burglary. Simple burglary is "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein." La. R.S. 14:62 A.

Specific intent to commit a felony or theft is required for attempted simple burglary. La. R.S. 14:27 and La. R.S. 14:62; State v. Jones, 426 So.2d 1323 (La. 1983); State v. Marcello, 385 So.2d 244 (La. 1980). Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); State v. Williams, 98-651 (La. App. 5 Cir. 02/10/99), 729 So.2d 14, 18. Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. Williams, 729 So.2d at 18; State v. Petty, 99-1307 (La. App. 5 Cir. 04/12/00), 759 So.2d 946, 949, writ denied, 00-1718 (La. 03/16/01), 787 So.2d 301. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. Id. at 18-19; Petty, 759 So.2d at 949. Additionally, flight and attempt to avoid apprehension are circumstances

from which the trier of fact may infer a guilty conscience. State v. Darby, 17-261 (La. App. 5 Cir. 11/15/17), 232 So.3d 1261, 1269; State v. Fuller, 418 So.2d 591 (La. 1982). It is not necessary for a simple burglary that an actual theft occur. State v. Hooker, 623 So.2d 178, 184 (La. App. 2 Cir. 1993); State in Interest of E.M., 22-307 (La. App. 1 Cir. 09/16/22), 2022 WL 4285936 (unpublished opinion).[9]

Additionally, attempted simple burglary requires proof that the defendant did or omitted an act "for the purpose of and tending directly toward the accomplishing of his object," sometimes referred to as an "overt act." La. R.S. 14:27 A and comments thereto; State v. Ordodi, 06-207 (La. 11/29/06), 946 So.2d 654, 661. In determining whether the action of defendant constitutes an overt act which is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. Id. at 662.

Here, the State was required to prove beyond a reasonable doubt that defendant attempted to enter the vehicle without authorization from the owner, Clifford Brown, and that defendant had the specific intent to commit a felony or theft therein. See State v. Bonck, 613 So.2d 1125, 1130 (La. App. 5 Cir. 1993), writ denied, 620 So.2d 840 (La. 1993).

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Garrison, 19-62 (La. App. 5 Cir. 04/23/20), 297 So.3d 190, 203, writ denied, 20-547 (La. 09/23/20), 301 So.3d 1190, cert. denied, — U.S. —, 141 S.Ct. 2864, 210 L.Ed.2d 967 (2021). Where the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. at 204. Positive identification by only one witness is sufficient to support a conviction. State v. Harrell, 19-371 (La. 07/08/20), 299 So.3d 1274, 1281. In the

---

[9] This case is published on the First Circuit Court of Appeal's website and therefore may be cited as authority despite the fact it is not designated for publication. See La. C.C.P. art. 2168.

absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Caffrey, 08-717 (La. App. 5 Cir. 05/12/09), 15 So.3d 198, 203, writ denied, 09-1305 (La. 02/05/10), 27 So.3d 297.

On appeal, defendant did not argue that the State failed to establish the first element of attempted simple burglary, *i.e.*, the attempted unauthorized entry of a vehicle. Instead, defendant contends that the State failed to prove beyond a reasonable doubt his identity as the perpetrator. Because defendant does not challenge this statutory element of attempted simple burglary, the sufficiency of the evidence with respect to that statutory element will not be addressed.[10] See State v. Nelson, 14-252 (La. App. 5 Cir. 03/11/15), 169 So.3d 493, 500 n.12, writ denied, 15-685 (La. 02/26/16), 187 So.3d 468; State v. Henry, 13-558 (La. App. 5 Cir. 03/26/14), 138 So.3d 700, 715, writ denied, 14-962 (La. 02/27/15), 159 So.3d 1064.

As to the issue of identity in this case, defendant has not argued that the identification itself was suggestive and that there was a likelihood of misidentification because of the identification procedure. Instead, defendant contends that the identification was suspect, which does not require a Manson[11] analysis. See State v. Medford, 489 So.2d 957, 961 (La. App. 5 Cir. 1986); State v. Hensley, 544 So.2d 47, 48 (La. App. 5 Cir. 1989). In the absence of a showing that an identification procedure was suggestive, challenges to the witness's powers of

---

[10] Nevertheless, considering State v. Raymo, 419 So.2d 858, 861 (La. 1982), we find the State presented sufficient evidence under the Jackson standard to establish the essential statutory element of unauthorized entry of the vehicle. The surveillance footage showed an individual attempting to enter the vehicle by pulling on the locked door handle with a bandana. The bandana became stuck and the individual pulled it free, causing an "audible sound" from the door handle. Detective Baldassara testified that the "audible sound" proved that the individual pulled on the door handle and was attempting to enter the vehicle. Additionally, Mr. Brown testified that he did not give defendant or any other individual permission or authority to "to use, enter, or in any shape, form, or fashion go into [his] vehicle" on the night of November 22, 2020 through the morning of November 23, 2020."

[11] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Generally, this Court has applied the Manson factors to an out-of-court identification of a defendant by a witness. See State v. Smith, 19-395 (La. App. 5 Cir. 03/13/20), 293 So.3d 732; State v. Francois, 13-616 (La. App. 5 Cir. 01/31/14), 134 So.3d 42, writ denied, 14-0431 (La. 09/26/14), 149 So.3d 261. However, this Court has also applied the Manson factors to address a defendant's challenge of the evidence of his identification being insufficient to support his conviction. See State v. Spurlock, 08-163 (La. App. 5 Cir. 05/27/08), 986 So.2d 89.

observation do not raise due process issues, but are matters to be considered by the jury. State v. Bradley, 11-1060 (La. App. 5 Cir. 09/25/12), 99 So.3d 1099, 1106, writ denied, 12-2441 (La. 05/03/13), 113 So.3d 208 (*citing* Medford, 489 So.2d at 962). At trial, the State established through circumstantial evidence that defendant was the individual shown on the surveillance footage attempting to enter Mr. Brown's vehicle without authority or permission.

Although the surveillance footage did not provide sufficient clarity for facial recognition, it provided sufficient clarity to show defendant's race, gender, and clothing. See State v. Rainey, 15-892 (La. App. 4 Cir. 01/27/16), 189 So.3d 439, 445, writ not considered, 16-611 (La. 04/22/16), 191 So.3d 1047. The surveillance footage showed a black male wearing dark clothing with a maroon shirt underneath, attempting to enter the vehicle by pulling on the locked door handle with a bandana. Detective Baldassara testified that he reviewed the surveillance footage the same morning he arrested defendant. Based on his observations and considering defendant's description and clothing, Detective Baldassara testified that defendant was the same person in the surveillance footage that he observed, chased on two separate occasions and subsequently arrested during his patrol on November 22, 2020 and November 23, 2020. He confirmed that defendant's booking photo showed him wearing a maroon shirt. Detective Baldassara also verified that the black and white bandana found where defendant was arrested played a factor in him concluding that defendant was the same individual in the surveillance footage. He also testified that defendant did not live in the subdivision and defendant was arrested in the vicinity of the attempted simple burglary of the vehicle. Furthermore, Detective Baldassara and Deputy Songy testified that, despite defendant's assertion to the contrary, the subdivision was not a feasible "cut-through" to get to defendant's residence because of the numerous obstacles, such as high walls and/or fences and cutting through other individual's yards. Moreover, they both testified that during

their patrol of the subdivision, which is a small area, defendant was the only person seen in the vicinity at the time of the attempted simple burglary of the vehicle.

As to the time of the attempted simple burglary, Mr. Brown testified that on the morning of November 23, 2020, he viewed the surveillance footage from his Ring camera for the night of November 22, 2022 until that morning. He testified that the surveillance footage showed an individual attempting to enter his vehicle that was parked in his driveway at his residence on Hector Avenue. Detective Baldassara and Deputy Songy testified that they patrolled the subdivision from 11:00 P.M. on November 22, 2020, until 7:00 A.M. on November 23, 2020. Detective Baldassara and Deputy Songy testified that defendant was the only person in the vicinity at the time of the attempted simple burglary.

Although the date and time are unclear on the surveillance footage before this court, the record indicates that during deliberations, the jurors requested the trial court to provide them with the time and date of the surveillance footage and the time and date of defendant's arrest. The trial court informed the jury that it could not provide information, but if the jury wanted to view the surveillance footage, that would be permissible. The State informed the trial court that the time and date were on the surveillance footage. The trial court then re-played the surveillance footage to the jury and the jury was permitted to move closer to the display to view the date and time displayed therein.

The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cuza, 18-187 (La. App. 5 Cir. 11/28/18), 260 So.3d 754, 758, writ denied, 19-17 (La. 11/12/19), 282 So.3d 232 (citing State v. Bailey, 04-85 (La. App. 5 Cir. 05/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). It is not the

function of the appellate court to assess credibility or reweigh the evidence. Id. (*citing* State v. Falcon, 06-798 (La. App. 5 Cir. 03/13/07), 956 So.2d 650, 657).

Upon review of the record, the jury's credibility determinations were rational. Therefore, viewing the evidence in the light most favorable to the prosecution, we find the State proved defendant's identification as the perpetrator of the attempted simple burglary of Mr. Brown's vehicle beyond a reasonable doubt. Accordingly, this assignment of error is without merit.

Upon review, the State also established the element of specific intent to commit a felony or theft therein. The surveillance footage showed that defendant pulled the locked front passenger door handle of the vehicle with a bandana and without Mr. Brown's authorization. Although the door did not open, a rational trier of fact could have found that defendant had the requisite specific intent to steal the vehicle or the contents therein but was unable to do so because the door was locked. In finding defendant guilty of attempted simple burglary of Mr. Brown's vehicle, the jury could have reasonably inferred from its review of the surveillance footage that defendant's act of pulling on the locked door handle of the vehicle with his bandana was an overt act establishing a specific intent tending toward the commission of a felony or a theft therein. See State in Interest of D.B., 22-28 (La. App. 1 Cir. 7/29/22), 2022 WL 3010210 (unpublished opinion; not designated for publication),[12] and State in Interest of E.M., supra, (both cases holding that the juvenile's pulling on car door handles was an overt act tending toward committing a theft or felony in the vehicles at issue).

Based on the act of pulling on the door handle, the jury could have also inferred that defendant had a specific intent to commit a theft or felony therein because the evidence showed that defendant did not reside in the subdivision and

___

[12] This case is published on the First Circuit Court of Appeal's website and, therefore, may be cited as authority despite the fact it is not designated for publication. See La. C.C.P. art. 2168.

despite defendant's assertion to the contrary, the subdivision was not a feasible "cut-through" to his residence. Additionally, defendant's act of fleeing law enforcement patrolling the subdivision in an attempt to avoid apprehension, on two separate occasions, and his presence in the vicinity and during the time of the attempted simple burglary, are circumstances from which the jury could have inferred a guilty conscience. State in Interest of E.M., supra; State v. Hooker, 623 So.2d 178, 184 (La. App. 2 Cir. 1993); State v. Fuller, 418 So.2d 591.

Considering the evidence and the Jackson standard, a rational juror could have found defendant's alternative hypothesis of innocence sufficiently unreasonable and could have concluded that the evidence proved that he intended to commit a felony or theft therein of the vehicle or its contents. Viewing the evidence in the light most favorable to the prosecution, we find the State proved beyond a reasonable doubt that defendant had the specific intent to commit a felony or theft therein of the vehicle.

For the reasons stated herein, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements of attempted simple burglary beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence.

**ERRORS PATENT**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals there are no errors patent in this case.

<u>**CONVICTION AND SENTENCE AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-KA-363

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
KATHERINE M. FRANKS (APPELLANT)          MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

## MAILED

MOLLY M. MASSEY (APPELLEE)
ATTORNEY AT LAW
3850 NORTH CAUSEWAY BOULEVARD
SUITE 108
METAIRIE, LA 70002

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
ZACHARY L. GRATE (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053